IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA JONES, | ) | CASE NO. 1:12 CV 2485 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.  Nature of the case and proceedings**

This is an action by Yolanda Jones under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 12.

[3] ECF # 9.

[4] ECF # 10.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.    The Commissioner's decision**

The ALJ found that Jones had the following severe impairments: anxiety related disorder, affective disorder, and borderline intellectual functioning.[11] The ALJ made the following finding regarding Jones's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations. She is capable of simple to moderately complex work, at a reasonable pace, no strict production quotas, low stress, and infrequent interactions with others.[12]

The ALJ decided that Jones had no past relevant work.[13]

---

[5] ECF # 5.

[6] ECF # 16.

[7] ECF # 22 (Commissioner's brief); ECF # 19 (Jones's brief).

[8] ECF # 22-1 (Commissioner's charts); ECF # 19-1 (Jones's charts).

[9] ECF #15 (Jones's fact sheet).

[10] ECF # 25.

[11] Transcript ("Tr.") at 17.

[12] *Id.* at 19.

[13] *Id.* at 22.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Jones could perform.[14] The ALJ, therefore, found Jones not under a disability.[15]

The Appeals Council denied Jones's request for review of the ALJ's decision.[16] With this denial, the ALJ's decision became the final decision of the Commissioner.[17]

**C.  Issues presented**

Jones asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Jones presents the following issues for judicial review:

- The ALJ found at step four that the opinion of Grace Herwig, a psychiatric nurse, should receive little weight. Does substantial evidence support that finding?

- The ALJ found at step four that Jones had the capacity for simple to moderately complex work, at a reasonable pace, with no strict production quotas and infrequent interactions with others. The ALJ incorporated that finding into the operative hypothetical to the VE at step five. Does that finding and hypothetical lack the support of substantial evidence?

---

[14] *Id.*

[15] *Id.* at 23.

[16] *Id.* at 1-3.

[17] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 416.1481.

**D.     Disposition**

For the reasons that follow, I conclude that the ALJ's RFC and no-disability findings have the support of substantial evidence. The denial of Jones's application for SSI will be affirmed.

## Analysis

**A.     Applicable law**

*1.     Substantial evidence*

The Sixth Circuit in *Burton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-4-

survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### *2.* *"Acceptable" and other medical source opinions*

The regulations[21] and Social Security Ruling 06-03p[22] set out the analytical framework for the ALJ's proper evaluation of opinions of medical sources not considered "acceptable."

Section 416.912 divides medical sources into "acceptable medical sources" and "other medical sources."[23] "Acceptable medical sources include licensed physicians or osteopaths and licensed or certified psychologists.[24] "Other medical sources" include nurse practitioners and physicians assistants.[25] This distinction has several implications in the evaluation of the opinions expressed by these sources.

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. §§ 416.902, 416.913, 416.927(d).

[22] SSR 06-03p;  Title III and XV: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45593 (Aug. 9, 2006).

[23] SSR 06-03p, at 45994.

[24] 20 C.F.R. § 416.913(a).

[25] *Id.* at § 416.913(d).

The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).

Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.[26]

Although generally opinions from an "acceptable medical source" will receive greater weight than the opinion of a medical source, the opinion of a medical source may outweigh that of an acceptable source based on the particular facts of the case, applying the factors for weighing opinions in 20 C.F.R. § 416.927(d).[27] When the ALJ considers the opinion of a medical source other than an "acceptable" one, he must determine the weight given to that opinion and explain the reasons for the weight assigned in the decision.[28]

---

[26] SSR 06-03p, at 45594.

[27] *Id.* at 45595.

[28] *Id.* at 45596.

### 3. *Limitations necessitated by a finding of moderate difficulties with concentration, persistence, or pace*

Where an ALJ determines that the claimant has moderate difficulties in concentration, persistence, or pace, the ALJ must then account for them in the RFC finding.[29] The Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*[30] provides the foundation for this requirement.

In *Ealy* the ALJ credited the opinion of the state agency reviewing psychologist that the claimant retained the ability to "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical."[31] The hypothetical to the vocational expert incorporated no reference to the two-hour limitation or to speed not being critical.[32] Rather it merely contained a limitation to simple repetitive tasks,[33] as did the residual functional capacity finding.[34] Based on the vocational expert's response to the

---

[29] *Williams v. Comm'r of Soc. Sec.*, No. 1:12CV358, 2013 WL 2319276, at *4 (N.D. Ohio May 28, 2013).

[30] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

[31] *Id.* at 509.

[32] *Id.* at 510.

[33] *Id.*

[34] *Id.* at 511.

-7-

hypothetical, the ALJ found that a significant number of jobs existed and Ealy not disabled.[35] The district court affirmed the agency's decision.[36]

On appeal the Sixth Circuit approved the ALJ's crediting of the state agency reviewing psychologist's opinion and the limitations therein.[37] It took issue, however, with the ALJ's failure to incorporate into the hypothetical to the expert the two-hour limitation to sustain attention to complete simple repetitive tasks and the proviso that speed not be critical.[38]

The court noted that the reviewing psychologist had opined moderate limitations in Ealy's abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek[39] without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[40] The ALJ concluded that Ealy had moderate difficulties with regard to concentration, persistence, or pace.[41] In finding the hypothetical to the expert deficient, the court cited approvingly cases stating the proposition that hypothetical limitations to "simple,

---

[35] *Id.*

[36] *Id.* at 511-12.

[37] *Id.* at 514-15.

[38] *Id.* at 516.

[39] *Id.* at 516 n.4.

[40] *Id.*

[41] *Id.*

-8-

routine, unskilled work" do not sufficiently address moderate deficiencies in concentration, persistence, or pace.[42]

In several cases post-*Ealy*, this Court seemingly adopted the rule that where the ALJ finds the claimant moderately deficient in concentration, persistence, or pace, a limitation to simple repetitive tasks in the hypothetical to the vocational expert does not adequately address those deficiencies.[43]

But several other post-*Ealy* decisions of this Court decline to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, or pace where he or she has significant difficulty responding appropriately to stress or pressure in the workplace or adapting to changes in the work environment.[44] The Court in *Jackson* stated that moderate difficulties in concentration, persistence, or pace must be coupled with

---

[42] *Id.* at 516-17, citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005), and *Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. 2008).

[43] *Candela v. Astrue*, No. 1:10CV1603, 2011 WL 3205726, at *10-11 (N.D. Ohio July 28, 2011); *Johnson v. Astrue*, No. 1:09CV2959, 2010 WL 5559542, at *8 (N.D. Ohio Dec. 3, 2010). Counsel for Raymond in this case represented the plaintiffs in the *Candela* and *Johnson* cases.

[44] *Steed v. Astrue*, No. 4:11CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Comm'r of Soc Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011). Counsel for Raymond in this case also represented the plaintiffs in the *Steed* and *Jackson* cases.

a finding of additional "speed- and pace-based restrictions" to make simple repetitive tasks an inadequate limitation in the RFC and hypothetical to the expert.[45]

The law in this District on the proper application of *Ealy* remains in the development stage. This Court in *Makan v. Covlin*[46] cautioned that on certain facts even a limitation to simple, routine, and repetitive tasks coupled with limitation to a low stress work environment would not be sufficient where stress did not cause the claimant's difficulties with concentration, persistence, or pace.[47] The limitations adopted, therefore, must address the underlying source of the claimant's impairment.

**B.     Substantial evidence review of the Commissioner's decision**

*1.     The weight assigned to Nurse Herwig's opinion and the reasons for that weight*

In this case the ALJ found that Jones had an RFC incorporating only mental limitations. The ALJ limited Jones as follows:

> [T]he claimant ... is capable of simple to moderately complex work, at a reasonable pace, no production quotas, low stress, and infrequent interaction with others.[48]

The ALJ posed a hypothetical to the VE consistent with this RFC finding.[49] In response, the VE identified three jobs at a medium or light exertional level incorporating

---

[45] *Jackson*, 2011 WL 4943966, at *4.

[46] *Makan v. Covlin*, No. 5:12 CV 31, 2013 WL 990824 (N.D. Ohio Mar. 7, 2013).

[47] *Id.* at *2 n.1.

[48] Tr. at 19.

[49] *Id.* at 45-46.

-10-

unskilled work.[50] The ALJ posed a second hypothetical incorporating more substantial mental limitations.[51] The ALJ took these limitations from a medical source statement prepared by Grace Herwig, a treating psychological nurse.[52] This statement is a check the blank form and contains no narrative.[53] In response, the VE stated that no jobs would exist in the national economy that Jones could do.[54]

Jones's counsel then posed a hypothetical that incorporated minimal interaction with people, no interaction with the general public, and off task at least 15% of the workday.[55] The VE responded that there would be no competitive employment with these limitations.[56]

The ALJ adopted the first hypothetical from an evaluation done by Karen Steiger, Ph.D., a state agency reviewing psychologist.[57] The ALJ gave Dr. Steiger's opinion great weight.[58] In support of this weight, the ALJ pointed to Dr. Steiger's review of a substantial portion of the medical record; her special expertise in social security evaluations;

---

[50] *Id.* at 46-47.

[51] *Id.* at 47-48.

[52] *Id.* at 1198-99.

[53] *Id.*

[54] *Id.* at 48.

[55] *Id.*

[56] *Id.* at 49.

[57] *Id.* at 1220.

[58] *Id.* at 21.

and the consistency of her opinion with treatment documents, daily activities, and the record as a whole.[59]

As for Nurse Herwig, the ALJ assigned her opinion little weight. As reasons, he pointed to a limited treating relationship of five appointments, the lack of a license as a psychologist,[60] and inconsistency with the opinions of acceptable medical sources.[61]

Neither Dr. Steiger nor Nurse Herwig are treating sources as defined in the regulation. Dr. Steiger is an acceptable medical source, whereas Nurse Herwig is a medical source. As provided in the regulations, the ALJ assigned weight to Nurse Herwig's opinion and gave reasons for the weight assigned. Jones takes issue with both the weight and the reasons.

But after careful review I conclude that a reasonable mind could conclude that the relevant evidence supports the ALJ's finding. Specifically, I have found nothing in the treatment notes of four sessions at Murtis Taylor Center[62] consistent with the extreme limitations opined by Nurse Herwig after three sessions or inconsistent with the lesser limitations offered by Jeffrey Rindsberg, Psy.D., a consulting examining psychologist, several months after Nurse Herwig's written evaluation.[63] The state agency reviewing

---

[59] *Id.*

[60] The form used by Nurse Herwig includes the following instruction: "If form completed by ... psychiatric nurse, please have the treating psychiatrist co-sign." *Id.* at 1199. No psychiatrist or psychologist signed the form. *Id.*

[61] Tr. at 22.

[62] *Id.* at 1201-04, 1210 (July 9, 2009); 1209 (July 23, 2009); 1237 (October 15, 2009); 1236 (March 29, 2010).

[63] *Id.* at 1242.

psychologist, Dr. Steiger, had the benefit of Dr. Rindsberg's opinion and gave it great weight in opining substantially similar limitations. [64]

Furthermore, a review of the Murtis Taylor treatment notes reveals that they were prepared by David Wasserman, a registered nurse only, and co-signed by Nurse Herwig.[65] This raises the question of the extent of Nurse Herwig's actual observation of Jones.

## 2. *The limitations in the RFC to compensate for Jones's moderate difficulties with concentration, persistence, or pace*

Jones also makes the argument of a shortcoming under *Ealy*. The ALJ found that Jones had moderate difficulties with concentration, persistence, or pace.[66] Under *Ealy* and its progeny, this finding requires some corresponding limitation on Jones's work capabilities. The ALJ does incorporate limitations of no strict production quotas, low stress, and work at a reasonable pace.[67] This may be borderline under *Ealy* but alone not a basis for a remand.

Jones complains that the ALJ's limitation to "simple to moderately complex work" overstates her capabilities contrary to the record evidence. Although the evidence may not support a capability for "moderately complex work," the ALJ asked the VE to identify "unskilled jobs" in his answer to the hypothetical incorporating the RFC finding.[68] The ALJ

---

[64] *Id.* at 1218-19, 1220.

[65] *Id.* at 1201-04, 1209, 1210, 1236, 1237.

[66] *Id.* at 18.

[67] *Id.* at 19.

[68] *Id.* at 46.

responded by identifying unskilled jobs only.[69] Under the regulations, unskilled jobs by definition encompass "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."[70] The jobs identified by the VE, therefore, were simple but not moderately complex.

Jones also faults the ALJ for failing to make a step five finding of no existing jobs based on the VE's answer to a hypothetical posed by Jones's attorney incorporating a 15% per workday off task limitation.[71] As explained above, substantial evidence supports the ALJ's hypothetical to the VE incorporating limitations for Jones's concentration, persistence, or pace difficulties focusing on unskilled work. As such, the ALJ committed no error by his non-reliance on the VE's answer to the alternate hypothetical.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Jones had no disability. The denial of Jones's application for SSI is affirmed.

IT IS SO ORDERED.

Dated: March 5, 2014  s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[69] *Id.* at 46-47.

[70] 20 C.F.R. § 416.968(a).

[71] Tr. at 48-49.